COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS, Nahum H. Tuttle & another, claimants.

The provision of the St. of 1869, *c.* 415, § 56, that the notice in a proceeding for the forfeiture of intoxicating liquors valued at more than twenty dollars shall be made returnable to the term of the superior court to be held in the county next after the expiration of fourteen days from the time of issuing it, refers only to terms at which criminal business may be transacted.

A complaint under the St. of 1869, *c.* 415, § 44, for a warrant to search a vehicle for intoxicating liquors, need not specify the kind of vehicle, if it identifies it otherwise; and if an unintelligible description of the kind of the vehicle is added, it may be rejected as surplusage.

Intoxicating liquors intended to be sold in violation of the St. of 1869, *c.* 415, by a person to whom they are in course of transportation with reasonable cause on the part of the carrier to believe that such is his intention, are liable to be seized and forfeited under that statute.

A complaint under the St. of 1869, *c.* 415, § 44, for a warrant to search a vehicle for intoxicating liquors which have already been seized in it under § 57 without a warrant, relates back to the time of the seizure, and is not vitiated by describing the liquors as still in the possession of the person by whom they were kept in the vehicle at that time.

In a proceeding under the St. of 1869, *c.* 415, for the forfeiture of intoxicating liquors seized in the possession of a carrier who was transporting them to a person by whom they were intended for illegal sale, evidence of declarations of the carrier is admissible to prove that he had reasonable cause to believe that such was the intention.

In a proceeding for forfeiture of intoxicating liquors under the St. of 1869, *c.* 415, evidence that the claimant keeps a saloon is competent upon the question whether he intended the liquors for illegal sale.

In a proceeding under the St. of 1869, c. 415, for forfeiture of intoxicating liquors seized, in the course of their transportation by a carrier, upon allegations that the person to whom he was carrying them intended them for illegal sale, and that he had reasonable cause to believe that such was the intention, a finding that he had such cause of belief is necessary to a judgment of forfeiture.

On the trial of an issue whether A. intended intoxicating liquors for illegal sale, which were seized by an officer, at a freight depot, in a wagon with which B. was just carrying them away, there was evidence that, immediately after the seizure, A. was present, when B., in driving off with the wagon and liquors, reached the junction of a lane, which led from the depot, with a street where A. kept a saloon; that B. stopped there, and hesitated to go in a direction in which he was ordered to go by the officer, who was also present; and that A. thereupon told B. to drive on. *Held,* that exceptions could not be sustained to a refusal of the presiding judge to rule that there was no evidence for the jury.

COMPLAINT under the St. of 1869, *c.* 415, to a trial justice within and for this county, on September 13, 1869, that certain intoxicating liquors, (particularly described,) on September 11, 1869, "were, and still are, kept and deposited by Ansel Smith of Northampton in said county and the Commonwealth of Massa·

chusetts, in a certain vehicle, to wit, a certain two hors wags, driven by said Ansel Smith, in said Northampton in said county, said liquor kept, deposited and being conveyed as aforesaid to another person other than the said Ansel Smith, to wit, one Patrick Maloney, said Patrick Maloney intending to sell said liquor in violat'on of the " St. of 1869, *c.* 415, " and said 'iquor has been sold in said Commonwealth in violation of said chapter, and the said Ansel Smith then and there having reasonable cause to believe that the said liquor has been so illegally sold, and is so intended for illegal sale as aforesaid, in said Commonwealth, against the peace of the Commonwealth and the form of the statute in such case made and provided ; " and praying " for a warrant to search said vehicle, described as aforesaid, for said liquor, and that the same may be declared to be forfeited, and that said Ansel Smith, and all other persons claiming an interest in said liquor, may be summoned to appear before said trial justice, or some other trial justice or court having jurisdiction of the case, to show cause, if any they have, why said liquor should not be declared forfeited."

Upon this complaint, a warrant was issued, on the same day, reciting in the same terms the allegations of the complaint, (save that the words " two horse wagon " were substituted for the words " two hors wags,") and directing the officers to whom it was addressed " forthwith to enter the vehicle herein above described, in the day or night time, and make diligent and careful search for all the liquor herein above described, and, if such liquor is found therein, to seize and convey the same, and the vessels which contain such liquor, to some place of safety, and safely keep the same to await the final action and decision of the court upon said complaint," and summon the complainants as witnesses.

The warrant was executed on that day, by a deputy of the constable of the Commonwealth, who made return thereon, the same day, that by virtue of it he had " searched the within described vehicle, and seized therein, and conveyed to a place of safety, the liquors described in the within warrant, with the vessels in which they are contained, to wit, about ninety-two gallons of whiskey in two casks, and about two hundred and thirteen gallons of gin

in five casks," and had summoned the complainants to appear as witnesses ; and upon the return of the warrant, the trial justice, still on said September 13, being of opinion that the value of the seized liquors and vessels exceeded twenty dollars, ordered notice, under § 48, to Ansel Smith, and all other persons claiming any interest in them, " to appear before the justices of the superior court for the transaction of criminal business, next to be holden at Northampton within and for said county of Hampshire, on the third Monday of December next, to answer to said complaint, and show cause, if any they have, why such liquors, with the vessels containing them, should not be forfeited."

The notice, thereupon served and published under § 56, was dated September 13, 1869, stated that the liquors and vessels were seized in the vehicle of said Ansel Smith on that day by virtue of " a warrant " issued by the trial justice, and required said Ansel Smith and any and all other persons claiming any interest in them " to appear before the justices of the superior court next to be holden at Northampton, in said county of Hampshire, on the third Monday of December next, to answer to the complaint against said liquors and vessels containing them, and for trial, and to show cause, if any you have, why said liquors and vessels should not be forfeited for being conveyed for sale by said Ansel Smith in violation of the laws of this Commonwealth ; " without setting forth more fully the allegations of the complaint and warrant.

At December term 1869 of the superior court, Nahum H. Tuttle and George W. M. Reed, both of New Haven in the state of Connecticut, as claimants of the liquors, entered a special appearance and filed a motion to dismiss the action, alleging " that the court ought not to entertain jurisdiction of said complaint and proceeding, for that the statute directs that whenever the value of the liquor and vessels exceeds twenty dollars the notice to be issued and served shall be made returnable to the ' term of the superior court to be held in the county next after the expiration of fourteen days from the time of issuing the notice,' and the aforesaid claimants show and aver that this is not the then next term, but that this action was justly cognizable at the October term of this court and at no other." The motion was overruled

by *Pitman*, J., whereupon the claimants entered a general appearance and objected that the complaint " was informal and insufficient, in this, that there was no proper description of the vehicle in which said liquors were kept and deposited ; and that the term ' two hors wags ' is insensible and unintelligible as a description of said vehicle." But the judge ruled " that it was immaterial what was the meaning of the words designated ; that they might be rejected as surplusage ; and that it was sufficient to allege that the liquors were kept and deposited in a certain vehicle, without further description of the nature of the vehicle." The claimants then further objected that the complaint, warrant and notices, and all proceedings under them, were irregular and void, because the notice " as published and served did not truly and properly set forth the time of seizure, or the violation of law for which the liquors were seized ; " and this objection also was overruled.

The case was then tried to the jury " on an issue directed by the court." The Commonwealth called Eli P. Nichols, a deputy of the constable of the Commonwealth, as a witness, who testified that he went to the Canal Railroad station in Northampton, between eleven and twelve o'clock on the night of Saturday, September 11, 1869, and found several persons there apparently engaged in removing liquor from the cars with two wagons ; that it was so dark that he could not distinguish who they were, except Ansel Smith, " who was the driver of a two horse wagon, with the seven casks loaded thereon, which were the same liquors now in controversy ; " that he " halted " Smith, who was driving the wagon ; and that he saw Patrick Maloney not more than a rod from where he stopped Smith, but did not observe Maloney do anything or say anything in relation to the liquor. The attorney for the Commonwealth asked the witness if Smith told him, at the time he was thus stopped, where he was going with the liquor and what was to be done with it. The claimants objected to the question ; but the judge ruled " that Smith's declarations were admissible, not as tending to charge Maloney with any violation or intended violation of the law, but to show Smith's connection with the keeping and transportation of the liquors ; " and

the witness testified, under objection, that Smith told him that he was hauling the liquor for Patrick Maloney. This witness was also allowed to testify, under objection, that Maloney kept a saloon in Northampton.

The witnesses for the Commonwealth testified that on Saturday, September 11, 1869, before midnight, "the liquor was conveyed by said constable, and deposited for safe keeping, to the jail, and left in charge of the sheriff till Monday, when some time in the day the complaint was made and the warrant issued." At the close of the evidence for the Commonwealth, the claimants objected that there was a variance between the testimony and the allegations, as to the time of the illegal keeping and transportation.

The verdict was in these words : " The jury find that the liquor described in the complaint was at the time and by the person alleged therein kept for the purpose of being sold in violation of law." To this verdict the claimants objected, " as not covering any proper issue in the case," and moved " that judgment be arrested thereon, and that said verdict be set aside ; " but the judge ruled " that said verdict was regular, formal and sufficient, and that judgment should be entered thereon," and ordered judgment accordingly, and the claimants alleged exceptions.

*C. Delano*, for the claimants. 1. A magistrate has no jurisdiction to receive a complaint, or issue a warrant, for the purpose of seizing liquors kept or deposited in a vehicle or other place by a person who has no intent to sell them and is merely transporting them to another person who is known to have such an intent. St. 1869, *c*. 415, §§ 44, 46, 51, 57. The statute is to be construed strictly. There is nothing in it to show that this extraordinary power of search and seizure is to run against mere carriers. It clearly does not reach a carrier of liquors already sold. See § 37 ; *Kennedy* v. *Favor*, 14 Gray, 200, 202; *Kent* v. *Willey*, 11 Gray, 368.

2. This complaint contains no such formal, particular and sufficient designation of the " building, structure or place " to be searched, as is required by § 46 ; and the warrant cannot remedy defects in the complaint.

3. All the proceedings in the case are irregular and void, because there was no proper notice duly served and published, truly

setting forth the time of seizure and the violation of law for which the liquors were seized. They were in fact seized on Saturday, September 11, in the vehicle, and were kept in the jail till Monday, September 13, when the complaint was first made and the warrant issued. The officer's return on the warrant, and the notices issued by the trial justice, all falsify the time of seizure. The complaint should have set out the original seizure without warrant on the 11th; the detention two days to procure a warrant; and then the seizure on the warrant, not as an original seizure, but according to the facts. The allegation that the liquors were on the 11th of September, and "still are" on the 13th, kept and deposited in a "vehicle," was not according to the fact or the proof.

4. On an issue between the Commonwealth and the claimants, the declarations of Ansel Smith were inadmissible for the Commonwealth.

5. The evidence that Maloney kept a saloon was immaterial and incompetent.

6. The verdict covers no proper issue. It finds, if anything, that on the 11th and thence to the 13th of September the liquor was kept by Ansel Smith, for the purpose of being sold by him in violation of law, when there is no allegation that Smith intended to sell the liquor. *Commonwealth* v. *Intoxicating Liquors*, 4 Allen, 601.

*C. Allen*, Attorney General, for the Commonwealth.

CHAPMAN, C. J. The magistrate properly made his proceedings returnable to the criminal term of the superior court to be held in December, instead of the civil term to be held in October; for civil business only can be done at the civil term, and criminal business at the criminal term.

The complaint contains a sufficient description of the vehicle in which the liquors were kept, without the words which are said to be insensible and unintelligible, and these words were properly rejected as surplusage.

The allegation of the intent to sell conforms to the provisions of the St. of 1869, c. 415. The seizure, the complaint and the warrant were under §§ 37, 44, 57. The criminal intent of the person who has the liquor in the vehicle arises from his having

reasonable cause to believe that it is intended for sale in violation of the act. The proceeding is *in rem*, the liquor being regarded by the statute, under these circumstances, as a nuisance. It may be seized and taken into custody, but a complaint must then be made, and when made it relates to the time when the seizure was made and not to a subsequent period when the officer has the liquor in custody.*

If the person having it in the vehicle has reasonable cause to believe that the person to whom he is carrying the liquor intends

* A similar decision upon this point was made at November term 1871 in Essex, in the case of

COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS, Hugh Owen, claimant.

COMPLAINT under the St. of 1869, c. 415, to a trial justice in Essex, on September 10, 1869, for a warrant to search "a certain vehicle, to wit, a certain wagon, driven by said Owen," for intoxicating liquors which it alleged were on September 9, 1869, "and still are" kept and deposited by him therein, "said liquor kept, deposited and being conveyed to another person other than the said Owen, whose name to the said complainants is now unknown, and said unknown person intending to sell said liquor in violation of" the St. of 1869, c. 415, "and the said Owen then and there having reasonable cause to believe that the said liquor" "is so intended for illegal sale," &c. The warrant issued thereon conformed to these allegations.

After the decision reported in 105 Mass. 468, the case was tried in the superior court before *Scudder*, J., who made a report thereof, which referred to the complaint and warrant and continued as follows: "At the hearing of the question whether the liquors should be forfeited, it appeared, among other things, that the vehicle and liquors described in the complaint had been seized by one of the complainants (an officer) the day before the complaint was made, without a warrant; and that they were still in his custody, and not in that of said Owen, when said complaint was made and sworn to, and when said warrant was issued. Thereupon the defendant objected that the proceedings could not be maintained; but I overruled this objection and instructed the jury that the variance was not material. A verdict having been rendered for the Commonwealth, I report the case for the determination of the supreme judicial court."

*W. D. Northend*, for the claimant.

*C. Allen*, Attorney General, for the Commonwealth.

BY THE COURT. The question raised has been settled in the case in Hampshire of *Commonwealth* v. *Intoxicating Liquors, Tuttle & another, claimants.* The statute regards the liquors as a nuisance, and the complaint relates to the time of seizure and not to the time when the officer has them in custody.

*Judgment on the verdict.*

to sell it illegally, he is aiding and abetting him in making it subject to seizure. The allegation of intent in the complaint is in conformity with this view.

His declarations as to what he is doing with the liquors, and how he intends to dispose of them, are admissible, being evidence against him. It was also pertinent to prove that Maloney, to whom he was carrying the liquors, kept a saloon, for it tended to prove the purpose for which he was procuring the liquors.

It is objected that the verdict finds no proper issue, and that judgment should not be rendered thereon. The judgment is not to be against Smith or Maloney, but against the liquor and casks. The verdict therefore ought to relate to the condition of the liquor, in respect to its being a nuisance. It should also follow the complaint, which is, that the liquor was kept by Smith in a vehicle, and was being conveyed to Maloney, who intended to sell it in violation of law, Smith having reasonable cause to believe, &c. The defect in this verdict is, that it does not find that Smith had the reasonable cause alleged for believing the intent of Maloney. This is a material fact, and should have been found.

*Exceptions as to the verdict sustained; and the other exceptions overruled.*

Before the jury were empanelled for the new trial, the claimant moved that the proceedings be quashed for want of jurisdiction, " because the process of seizure would not lie against a carrier transporting liquor to a person other than himself, and intended for illegal sale by that other person; " and the motion was overruled.

At the trial, before *Dewey,* J., Nichols was called again as a witness for the Commonwealth, and testified that about half past eleven o'clock on the night of Saturday, September 11, 1869, he went, with assistants, to the freight depot of the railroad station in Northampton, " and found Ansel Smith just driving away with a load of the liquor in controversy, and required him to stop, and asked him where he was going; that the load was made up of seven barrels of liquor; and that another wagon was at the depot,

being loaded, but at the approach of the witness and before he could reach the second wagon the liquor was rolled from it back into the car."

In the course of this testimony, Nichols was asked by the attorney for the Commonwealth what Smith replied when the witness asked him where he was going with the liquor; the claimants objected to the admission of Smith's declarations for any other purpose than to show his own violation of the law; and the answer of the witness, that Smith replied " that he was going to Patrick Maloney's," was admitted only for that purpose. It also appeared that Smith made a similar statement to Ignatius L. Randall, another witness for the Commonwealth.

" Nichols also testified that, as Smith was driving out of a narrow lane which leads from the railroad station into Main Street, he stopped and hesitated to go on in the direction in which he was told to go by the constables; and that near the wagon at this point he saw Maloney in company with three or four others, but could only distinguish Maloney, and could not say whether he stopped or not, and did not hear him say anything. Randall, who was also accompanying the team, testified that he saw Maloney and the others, but could only recognize Maloney; that Maloney said ' Drive on ; ' and that that was all he heard him say.

" Nichols and Randall both testified that Maloney at the time of this seizure kept a saloon on Main Street in Northampton, and had been keeping such saloon ; and that he had since added a grocery ; but there was no testimony that he kept intoxicating liquors in said saloon."

The testimony as to the disposition made of the liquors after their seizure, and as to all the subsequent proceedings, was the same in substance as on the former trial.

The claimants, after the evidence was all in, requested the judge to rule that there was not sufficient evidence to show that the liquor was intended for sale by Patrick Maloney; but he refused so to rule.

Upon proper issues framed for the jury, they returned the following verdict: " The jury find that the liquors described in the complaint were by Ansel Smith kept as alleged therein and in-

tended for sale by Patrick Maloney, in violation of the provisions of the four hundred and fifteenth chapter of the statutes of this Commonwealth for the year eighteen hundred and sixty-nine, and that Ansel Smith had reasonable cause to believe that Patrick Maloney intended to sell the same in violation of the provisions of said statutes." The claimants alleged exceptions, which were argued at September term 1872.

*Delano*, for the claimants, upon the point of want of jurisdiction, repeated his former argument on that question; and argued further as follows: There was no sufficient evidence of an intent on the part of Maloney illegally to sell the liquors, and the judge should have ruled so. Smith's statements were hearsay so far as Maloney was concerned, and were properly rejected on the question of Maloney's intent to sell. The only other evidence came from Nichols and Randall. They saw Maloney on the street, and one of them heard him say " Drive on; " and they both testified that he kept a saloon, but there was no evidence that he kept intoxicating liquors in his saloon. The question then is, whether, assuming, as the law presumes, that Maloney was walking the streets as an innocent man, it is enough to overcome that presumption, that one witness heard him say " Drive on," the only other fact being that he kept a saloon; or, in other words, if a saloon-keeper says " Drive on," to a truckman who has liquor on his cart, is it either a conclusion of law or presumption of fact that the saloon-keeper intends illegally to sell that liquor. *Commonwealth* v. *Packard*, 5 Gray, 101. *Chase* v. *Breed*, Ib. 440. *Commonwealth* v. *Snow*, 14 Gray, 385. *Commonwealth* v. *Merrill*, Ib. 415. *Cochrane* v. *Boston*, 4 Allen, 177.

*C. R. Train*, Attorney General, for the Commonwealth, to the point of the sufficiency of the evidence for the jury, cited *Commonwealth* v. *Gillon*, 2 Allen, 505.

CHAPMAN, C. J. The point is again made, that the seizure process does not lie against a carrier transporting liquor to a third person as the owner, to be illegally sold by that person. The decision at the former hearing covered that point, and was affirmed at November term 1871 for Essex, in the case of *Commonwealth* v. *Intoxicating Liquors, Hugh Owen, claimant*. We see

no reason to doubt its correctness. The language of the thirty-seventh section of the St. of 1869, *c.* 415, describes a carrier who does not intend to sell the liquor himself, but has reasonable cause to believe that the person to whom he is carrying it intends to sell it unlawfully, and makes him liable .o a fine. Section 44 makes the liquor liable to be seized in his vehicle, upon complaint as specified. Section 57 authorizes the seizure by certain officers without warrant. These provisions are not modified by the language of any other section. The seizure is a proceeding *in rem* against liquor *in transitu.* If the person to whom it is to be carried intends to sell it unlawfully, and the carrier has reason to believe this, it is subject to forfeiture as a nuisance. When a claimant comes in, it is the liquor that is the subject of controversy.

The evidence in this case, as to the business, the acts and the language of Maloney, was pertinent, and also the acts and language of the carrier; and we think it was sufficient to authorize the findings of the jury.    *Exceptions overruled.*